### THE CALIFORNIE.

#### THE JOHN E. McALLISTER.

##### (Circuit Court of Appeals, Second Circuit. March 13, 1918.)

##### No. 111.

COLLISION ⬤�longrightarrow95(5)—STEAMSHIP—LIABILITY.

A steamship, which collided in North River with the starboard barge of a hawser tow of two boats in charge of a tug, *held* wholly in fault; the collision resulting from a wrongful change in the steamer's course when the vessels were on substantially opposite parallel courses, warranting a starboard to starboard passage.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by A. J. & J. J. McCollum, Incorporated, and Christopher Fitzpatrick against the steamship Californie, her engines, etc., claimed by the Compagnie Générale Transatlantique, in which the steam tug John E. McAllister, her engines, etc., claimed by the McAllister Bros., was impleaded. From a decree in favor of libelant, which exonerated the steamship Californie, the claimants of the steam tug John E. McAllister appeal. Remanded, with directions to modify the decree by awarding libelant damages against the Californie, and dismissing the McAllister, with costs.

Certiorari was denied by the Supreme Court. 247 U. S. ——, 38 Sup. Ct. 580, 62 L. Ed. ——.

Suit grew out of a collision between the forward starboard side of the steamship Californie, and the "extreme starboard end" of the starboard barge of a hawser tow of two boats in charge of the tug McAllister. Contact occurred in the North River, nearly off the foot of Charlton street, and in daylight. That steamship was about 380 feet long, and the tow, from stern of boats to bow of tug, at least as long. The Californie was bound up river to her pier; the McAllister on a trip from Guttenberg to Newtown creek. The tide was just beginning ebb, the wind negligible, and there had been fog until shortly before collision, but tug and steamer saw each other when at least 1,500 feet apart. Every other relevant fact is in sharp dispute; i. e., signals, relative positions, speed, and time of fog's lifting. Testimony for the Californie was nearly all by deposition. Collision sank the barge, whose owner sued the steamer alone, and that vessel impleaded the McAllister.

The lower court held the tug solely at fault. Her owners appeal.

Walter C. Noyes and Nelson Zabriskie, both of New York City, for appellants.

Joseph P. Nolan, of New York City, for appellee The Californie.

Pierre M. Brown and Macklin, Brown & Purdy, all of New York City, for other appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The reasons for collision, given by both sides, assert great negligence in the other party; the lower court found it impossible (as do we) to reconcile the two stories, and gave decision to the steamer, substantially on the ground that hers was the more inherently probable tale. The fog question is not, we think, of importance. By the steamer's evidence alone it is shown that she had traveled from Quarantine to the point where she saw the tow in exactly an hour, a distance of quite 8 miles. She blew her fog whistle for the last time before any tow was seen, and the forecastle lookout reported the tow, which looked a "dark mass," from a distance estimated as high as 500 meters; the New York shore then showing so plainly that the numbers on the pier ends could be read. This shows no fog interfering with careful river navigation. Doubtless it was still hazy; but as it also appears that other vessels clearly saw the collision, that the McAllister admits seeing the steamer a quarter mile away, and none of the testifying observers were blowing fog signals, we feel justified in the above preliminary statement.

The speeds of the two vessels present the first serious contest. The Californie, by many witnesses, claims not over four knots after passing the Liberty Statue. How, in a lightening fog, she got from Quarantine to anywhere near Charlton street in an hour at that rate, is hard to understand, for such evidence makes her go slower as the "dense fog" in which she started from Quarantine grew thinner. As for the McAllister, we are satisfied that, with the first of the ebb tide aiding, she could not make over 4 knots by the land with the tow she had. For computation, therefore, we assume both vessels proceeding at 4 knots when they saw each other a quarter mile apart.

The bearing of each boat from the other at the moment of vision is also in violent dispute, and presents the legal question in the case; for if they were then end on, or nearly so, the Californie's navigation was right, while if then on courses such as safely to pass starboard to starboard, it was acutely wrong. The steamer's witnesses unanimously declare that the "dark mass" seen 1,500 feet away bore a half point on the port bow, whereupon one whistle was blown and the helm ported, producing a change of heading to starboard by time of collision of 40 degrees at least; nevertheless contact occurred at a point at least 400 feet (125 meters by least estimate) to the starboard of steamer's course at time of seeing tug and tow. How far the Californie would have gone ahead through the water in making a 40 degree turn, and getting 400 feet to the starboard of her original course, cannot be determined with accuracy; but there is nothing to contradict her pilot's estimate (absurd as it seems to us) that she would forge ahead 2,000 feet before stopping dead, if engines reversed full speed when going ahead at four knots. The rest of the steamer's story is that, when the tug replied with two, to the steamer's second single blast, the engines were reversed full speed, and collision happened with the Californie barely moving. But all agree that what hit the barge was the starboard side of the Californie, perhaps as far back as the foremast; the blow was a slap, not a piercing.

No other statement of collision can be spelled out of the evidence for the steamship; we consider it not only improbable, but impossible. Nor can any allowance for error in estimates materially better it. It asserts that while the steamer was changing heading nearly four points, and moving to starboard more than her own length, the tug hauled the whole tow across the swinging bow, and then so changed course as to let the barge's quarter be slapped by the steamer's side; and this agility is ascribed to a tug, valued at only $6,000, which by all the evidence was doing her very best to make about 4 knots with a favoring tide. The incredibility of the tale may be accentuated by computing how much farther the McAllister must have traveled than did the Californie after they saw each other, in order to collide; but we regard the matter as plain enough.

On the other hand, three licensed masters, disinterested on the record, saw both vessels before and at collision, and all strongly confirm the vital assertion of the McAllister that she was going down river on a course so far to the eastward of that of the Californie as to render a starboard passing safe and lawful; and they also confirm the statements of the other side that before collision the steamer swung to starboard nearly, if not over, four points. Their estimates of distance vary, and are probably overstated; but we see no escape from the conclusion that the weight of evidence is distinctly to the effect that the admitted change of the steamer's course was a wrongful sheer, because it brought her in collision with a boat that was passing to starboard and rightfully so. The tug's witnesses can give no reason for that sheer, nor can the court; we must and do base decision on one finding, viz.: That when a quarter mile apart the boats were on substantially opposite parallel courses, warranting a starboard to starboard passage, which the McAllister claimed, and the steamer did not accord. Therefore the latter is solely at fault.[1]

Cause remanded, with directions to modify decree by awarding to libelant damages against the Californie, with costs, both here and below, and dismissing the McAllister, with costs against the Californie in both courts.

---

[1] It is the opinion of the writer that (1) the Californie was going more than four knots; (2) that she was and had been, before seeing the "dark mass," edging in for a landing on the New York shore, i. e., to starboard (this indeed is admitted); (3) that the weather was still slightly hazy; and (4) that the "dark mass" was probably not the McAllister at all. Result is that the steamer did not see what she hit until too late.